IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DANNY RAGSDALE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-3464-CV-S-ODS-SSA |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born in December 1963, completed high school, and has prior work experience as a building supplies sales representative, a carpenter supervisor, and a carpenter. He filed for benefits in May 2009, contending he became disabled on April 11, 2009, due to a combination of back problems, neuropathy of this hands and feet, and depression.

#### A. Physical Impairments

Plaintiff's medical records begin in 2002. R. 216-21. On June 14, 2002, Plaintiff underwent an EMG, which confirmed abnormalities consistent with the diagnosis of neuropathy with liability to pressure palsies. R. 217. Plaintiff was diagnosed with the following: bilateral mild to moderate carpal tunnel syndrome; bilateral ulnar

neuropathies at the elbows; slowed deep peroneal and tibial motor conduction velocities, and prolonged peroneal distal latencies suggestive of a mild underlying peripheral neuropathy. R. 217, 220. On July 3, 2003, Plaintiff was diagnosed as having chronic bronchitis and mild pulmonary hypertension. R. 223, 255. Plaintiff underwent an MRI of the low back on December 5, 2008, which revealed degenerative disc disease at L1-L2, L2-L3, L4-5, and L5-S1, herniated disc at L2-3, and bulging discs at L4-5 and L5-S1. R. 258-59. On December 30, 2008 and January 6, 2009, Plaintiff received epidural injections at L5-S1, for the diagnosis of lumbar radiculitis. R. 256, 289. Plaintiff underwent left L2, L3, L4, and L5 medical branch neurotomy, and L3-4, L4-5, and L5-S1 facet joint denervation procedures in 2010. R. 447, 456, 460. Plaintiff received other epidural injections in April 2010. On July 20, 2010, Plaintiff underwent a low back discogram, which revealed markedly degenerative disc disease. R. 416-17.

B. Mental Impairments

The Record indicates that Plaintiff's primary care physician, Steven Cherry, D.O., prescribed medication for Plaintiff's anxiety and depression before and after his alleged disability onset date. R. 383-91.

On June 28, 2009, Plaintiff underwent a consultative psychological evaluation by Thomas J. Spencer, Psy.D., to determine Plaintiff's eligibility for Medicaid. R. 304-07. Plaintiff told Dr. Spencer that he was laid off at his last job because of the economy. R. 305. Dr. Spencer reported Plaintiff had no impairment in hygiene or grooming. *Id.* With regard to Plaintiff's social functioning, Dr. Spencer noted Plaintiff had regular contact with his children and grandchildren. *Id.* Plaintiff did not report any hobbies or interest during his evaluation, but did not attribute this lack of hobbies or interest to his alleged mental impairments. *Id.* Dr. Spencer's evaluation revealed Plaintiff did not have any difficulty with memory, attention, or concentration. R. 306. Dr. Spencer assessed Plaintiff as having recurrent moderation major depressive order and anxiety disorder, not otherwise specified. R. 307. After Dr. Spencer's evaluation, he concluded:

2

> [I]t is this examiner's opinion that Mr. Ragsdale has a mental illness, one which interferes with his current ability to engage in employment suitable for his age, training, experience, and/or education. The duration of the disability may exceed 12 months although with appropriate treatment and compliance, prognosis should improve.

R. 307.

On September 29, 2009, Lester Bland, Psy.D., a State agency psychological consultant, reviewed Plaintiff's medical records. R. 360-70. Dr. Bland's notes indicate he was well aware of Plaintiff's long history of depression and anxiety and that Plaintiff had been doing better while on his mental health medications. R. 370. The notes also opine that Dr. Spencer's suggestion that Plaintiff suffered from a disabling mental impairment was inconsistent with the objective medical evidence. *Id.* It was also noted that Plaintiff had never been referred to see a mental health professional or sought mental health assistance from a professional after receiving Medicaid benefits. *Id.* Dr. Bland noted that Plaintiff's allegations of physical and mental impairments were only partially credible due to the persistency and severity alleged. *Id.* Dr. Bland concluded that Plaintiff's mental impairments were non-severe. *Id.*

On January 14, 2010, Plaintiff was evaluated by Loretta Baker, a licensed clinical social worker. No psychological testing was performed. Plaintiff requested and was given referrals for individual therapy and a psychiatric evaluation. R. 381. Ms. Baker diagnosed Plaintiff with recurrent major depressive disorder, panic disorder with agoraphobia, and generalized anxiety disorder. R. 380.

On January 29, 2010, Plaintiff was evaluated by Richard Aiken, M.D., who diagnosed Plaintiff with moderate to severe major depressive disorder. R. 376. Dr. Aiken noted that Plaintiff had improved with an increased dosage of anti-depressant medication, and prescribed additional medication to help him sleep. R. 376-77. Dr. Aiken recommended that Plaintiff follow up in two weeks; however, the evidence fails to show Plaintiff sought any further mental health treatment. R. 377.

3

### C. Plaintiff's testimony and the ALJ decision

Plaintiff appeared and testified in front of an administrative law judge ("ALJ") on January 31, 2011. R. 23-47. Plaintiff missed a lot of work due to back problems before his position at Southern Hills Estates had been eliminated. R. 28. Plaintiff also testified he has been receiving unemployment since July or August of 2009. R. 28. He alleged he is unable to sit or stand for more than 10 minutes at one time before he must change his position. R. 34. Plaintiff does not like taking pain pills for his back problems because they made him nauseated. R. 29. Plaintiff's neuropathies of his hands and feet makes it difficult to grasp things or use his hands repetitively. R. 31-32. Plaintiff also testified having depression, which causes him trouble concentrating. R. 33-34.

The ALJ determined Plaintiff had not engaged in substantial gainful activity since April 11, 2009. The ALJ found that Plaintiff has the following severe impairments: neuropathic pressure palsy; degenerative disc disease of the lumbar spine; and history of chronic bronchitis. However, the ALJ found Plaintiff's condition did not meet or equal a listed impairment. The ALJ determined Plaintiff retained the residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally lift and/or carry 20 pounds; frequently light and/or carry 10 pounds; stand and/or walk a total of 6 hours in an 8 hour workday, continuously 2 hours; sit a total of 6 hours in an 8 hour workday and continuously 2 hours. He can occasionally bend, stoop, couch, squat, kneel or crawl. He should avoid exposure to extreme temperatures, dust, fumes and poor ventilation. He is unable to perform prolonged or repetitive power gripping.

The ALJ also found Plaintiff is capable of performing past relevant work as a sale representative for building supplies. The ALJ concluded Plaintiff was not disabled.

## II. GENERAL LEGAL PRINCIPLES

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial

4

evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991) (citing *Hutsell v. Sullivan*, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

### III. DISCUSSION

Plaintiff argues the ALJ improperly determined Plaintiff's RFC and erred in determining whether Plaintiff suffered from a listed impairment.

#### A. The ALJ Properly Determined Plaintiff's RFC

Plaintiff argues the ALJ erred in determining his RFC because the ALJ: (1) relied on no medical evidence; (2) improperly rejected his testimony; and (3) improperly rejected Plaintiff's severe mental impairments.

##### 1. Medical Evidence

Plaintiff first argues that the ALJ erred in formulating his RFC conclusion because he failed to cite to any medical authority for the various limitations imposed. The Court disagrees.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860,

5

863 (8th Cir. 2000). "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). "'[A]n ALJ's failure to cite evidence does not indicate that such evidence was not considered.'" *Wildman v. Astrue*, 596 F.3d 959 (8th Cir. 2010) (quoting *Black*, 143 F.3d at 386)); *see also Irvin v. Astrue*, No. 10-0993-CV-W-DGK-SSA, 2011 WL 4067509 (W.D. Mo. Sept. 13, 20110) ("While failure to discuss or cite every piece of evidence may result in a less thorough written opinion, it does not indicate that the evidence was not considered.").

Because a RFC determination is a medical question, an ALJ's finding must be supported by *some* medical evidence. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005); *see also* 20 C.F.R. 404.1545(a). However, the ALJ still must base his decision on all relevant evidence. *Id.*; *see also Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively."). An ALJ is not required to immediately follow each FRC limitation with a specific list of the evidence on which the ALJ relied to support it. *See* SSR 96-8p.

Here, the ALJ properly considered the medical evidence of record, discussing the objective medical findings and Plaintiff's medical treatment history at length. R. 14-17. Although the ALJ may not have specifically discussed the medical evidence he considered and the weight he gave to each when making the RFC determination, he expressly noted that he considered the "entire record" including "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." R. 15. This Court cannot conclude that the ALJ improperly determined Plaintiff's RFC by not citing to medical evidence.

*2. Plaintiff's Testimony*

Second, Plaintiff argues the ALJ erred in assessing the credibility of his allegations that he suffered disabling limitations that affected the use of his arms and legs and cause him to be unable to sit or stand for more than 10 minutes at a time. As the ALJ noted—as

6

is often the case—the critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that he experiences. *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) sets out the standard for analyzing a claimant's subjective complaints of pain:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>   1. the claimant's daily activities;
>   2. the duration, frequency and intensity of the pain;
>   3. precipitating and aggravating factors;
>   4. dosage, effectiveness and side effects of medication;
>   5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.3d at 1322.

Here, there is substantial evidence in the Record to support the ALJ's finding that Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not fully credible. Plaintiff underwent a pain management evaluation in August 2010, after which it was recommended that Plaintiff be seen twice a week for six weeks of physical therapy. However, the Record shows the Plaintiff did not return for treatment after the August 2010 evaluation. The failure to follow a physician's advice is inconsistent with complaints of disabling pain. *E.g., Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006). Plaintiff also testified that although he was proscribed narcotic pain medications, he did not like to take the medication because it made him

7

nauseated. Plaintiff's medical records lack any complaints of pain pill side effects. *See, e.g.*, *Depover v. Barnhart*, 439 F.3d 563, 566 (8th Cir. 2003) ("We also think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant] having side effects from any medication.").

The record also fails to establish that Plaintiff left the work force solely because of his impairments. Plaintiff told Dr. Spencer he was laid off due to the economy. *See Medhaug v. Astrue*, 578 F.3d 805, 816-17 (8th Cir. 2009) (fact that claimant left work not because of any back injury but because he was laid off due to a decline in work relevant to credibility determination). Moreover, Plaintiff has been drawing unemployment since July or August 2009 even though a claimant who applies for unemployment compensation benefits holds himself out as available, willing, and able to work. *See*, *Paschal v. Astrue*, 372 Fed. Appx. 687, 688, 2010 WL 1629091, at *1 (8th Cir. Apr. 23, 2010) (fact that claimant applied for unemployment insurance benefits relevant to credibility inquiry).

Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision. The Court finds the ALJ properly determined Plaintiff's RFC by taking into consideration the credibility of Plaintiff's testimony.

*3. Severe Mental Impairments*

In this case, the ALJ properly determined Plaintiff's major depressive disorder and generalized anxiety disorder were nonsevere. In making this determination, the ALJ relied on the opinion of Dr. Bland who reached the same conclusion. Although Dr. Spencer opined that Plaintiff's mental impairments interfered with his ability to engage in employment, the ALJ correctly noted that a decision by or for any other nongovernmental agency or other governmental agency about whether an individual is disabled is based on that agency's rules and not binding on the Social Security Administration. *See* 20 C.F.R. § 404.1504; *see also Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) (whether a claimant is disabled under state law is not binding on the Commissioner of Social

8

Security).  The ALJ gave little consideration to the Global Assessment of Functioning ("GAF") scores reported by Dr. Aiken and Ms. Baker because a GAF is an "unexplained, 'global' conclusion derived, apparently, from unexpressed impressions created by claimant's subjective complaints rather than from objective testing or reviewable measurements."  R. 14.  Further, the ALJ noted that a GAF score "gives little assistance in arriving at specific functional limitations or capabilities."  R. 14.

After a careful review of the Record, this Court finds there is substantial evidence supporting the ALJ's finding that Plaintiff's mental impairments are nonsevere.  First, although Plaintiff's anxiety and major depressive disorder have been chronicled throughout Plaintiff's treatment history, the mere presence or diagnosis of a mental disturbance does not mean it is "severe" within the meaning of the regulations.  *See, e.g.*, *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) ("[A]lthough Buckner was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that his depression and anxiety were not severe.").  Second, Plaintiff's mental impairments cannot be considered disabling when they can be controlled with treatment or medication.  *See, Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009).  Dr. Spencer indicated Plaintiff's mental conditions should improve with appropriate treatment and compliance.  R. 307.  Dr. Aiken noted that Plaintiff had improved with an increased dosage of anti-depressant medication.  R. 376.  Further, Plaintiff only saw Ms. Baker and Dr. Aiken once and failed to return for further treatment.

In Plaintiff's reply brief, he argues Dr. Bland's opinion was an improper basis to support the ALJ's conclusion because it was made prior to Ms. Baker's and Dr. Aiken's evaluation.  The Court is not persuaded by this argument because the ALJ still took these two evaluations into consideration before determining Plaintiff's conditions were nonsevere.  Plaintiff also contends Dr. Bland was unaware that Dr. Cherry had treated Plaintiff from 2007 through 2010 and frequently diagnosed Plaintiff with depression and generalized anxiety disorder.  The Record indicates Dr. Bland was well aware that Plaintiff saw Dr. Cherry for mental health treatment and management.  R. 370.  Dr. Bland was also aware of Plaintiff's long history of depression and anxiety, yet still came to the conclusion that Plaintiff's conditions were nonsevere.  For the aforementioned

9

reasons, the Court finds the ALJ properly concluded that Plaintiff's major depressive disorder and generalized anxiety disorder were nonserve.

### B. The ALJ Did Not Err in Analyzing Listed Impairments

Finally, Plaintiff argues his impairments satisfy the elements of Listing § 1.04A. This Court finds there is substantial evidence to support the ALJ's finding that Plaintiff does not suffer from a listed impairment.

At step three, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The claimant bears the burden of establishing each of the elements of a listed impairment. *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

Listing § 1.04A provides for evaluation of disorders of the spine, including herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture "resulting in compromise of a nerve root . . . or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 1.04. Subsection A of Listing § 1.04 requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

*Id.*

Here, Plaintiff has failed to meet his burden of demonstrating through medical evidence that his impairments have resulted in a compromise of a nerve root or the spinal cord. As the ALJ points out, the Plaintiff's representative failed to contend at the hearing or otherwise that Plaintiff's impairment either meets or equals any listing. R. 14.

10

Further, contrary to Plaintiff's assertion, the ALJ made a proper evaluation of whether Plaintiff suffered from a listed impairment and after "reviewing all the documentary evidence and testimony of record" concluded "the claimant's impairment does not meet or equal any of the criteria set forth in any of the listed impairments . . . ." R. 14. The fact that the ALJ did not elaborate on this conclusion does not warrant reversal, because the record supports the overall conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 n. 3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review.").

Plaintiff argues that he demonstrated that he suffers from degenerative disc disease, lumbar radiculitis, neuropathy affecting his legs, and a positive straight leg test. However, these findings do not establish a compromise of a nerve root or the spinal cord as required by § 1.04. Plaintiff references a magnetic resonance imaging (MRI) scan he underwent that showed a small disc extrusion on the left at L2-L3 without appreciable neural impingement. The reviewing doctor noted "[c]onceivable this could cause intermittent impingement upon the left L2 nerve root." However, a "conceivable" possibility of intermittent nerve impingement does not establish a compromise of a nerve root. *Decker v. Astrue*, No. 11-3115-CV-S-DGK-SSA, 2001 WL 6000257, at *2 (W.D. Mo. Nov. 30, 2011) ("'[P]robable' or 'possible' findings, however, are not sufficient to establish compromise of the nerve root or spinal cord as required by Listing § 1.04A."). The record lacks any other support showing that Plaintiff's impairments establish a compromise of a nerve root or the spinal cord. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's back impairment does not meet or medically equal listing § 1.04A.

## III. CONCLUSION

Because there is substantial evidence in the record to support the ALJ's decision, the Commissioner's final decision is affirmed.


IT IS SO ORDERED.


|  | /s/ Ortrie D. Smith |
|---|---|
|  | ORTRIE D. SMITH, SENIOR JUDGE |
| DATE: October 23, 2012 | UNITED STATES DISTRICT COURT |